Renkert v. Elliott.

ANDREW RENKERT v. JOSEPH ELLIOTT.

1. PLEADINGS AND PRACTICE  Bond, attachment.  The bond which is required upon suing out an attachment, and which the statute directs shall be made payable to the defendant, will enure to the benefit of each and all of several defendants who may be aggrieved, and among others to the benefit of the defendant whose property is attached as the property of the debtor, although the bond be made payable to one defendant named " et al."

2. SAME.  Same.  If one defendant alone is aggrieved, he may sue in his own name avowing in his declaration that the other defendants had no interest in the damages claimed, or in the name of all of the defendants for his use, and the suit may be continued in his own name if the other plaintiffs die, or if, at the instance of his adversary, the trial court compels him so to do.

3. SAME.  Same.  Under attachment bond which follows the words of the statute, the obligors are liable to each defendant severally if each have a several interest, and the surety for each of his principals severally as well as jointly.

4. SAME.  Attachment.  Penalty of bond.  An attachment sued out under the Code, sec. 4283, et seq., is not a jurisdictional writ, and abides the event of the suit unless sooner discharged by the court.  But such an attachment ought not to be discharged in toto for the failure to increase the penalty of the bond, but the levy should be reduced so as to be within the penalty.

5. SAME.  Attachment bond.  State not required to give.  The State cannot be required to give an attachment bond, and no liability can be created on the part of persons purporting to execute a bond as sureites.

6. SAME.  Same.  Damages.  Where an attachment bill has been filed by a creditor against his debtor, to reach property alleged to be held by a third person under a title fraudulent as to the creditor, the question whether the attachment was wrongfully sued out as to such person is not tested by a discharge of the attachment for the want of an increased bond, or by the dismissal of the suit at the cost of the defendants because the creditor's debt had been paid, or satisfied even by a compromise.  In such a case, the question may be made in a suit for the damages occasioned by the wrongful suing out of the attachment.

Renkert *v.* Elliott.

7. SAME. *Same. Exemplary damages.* In a suit on an attachment bond against a surety, the plaintiff is not entitled to recover exemplary damages unless the principal is fixed with malice, or a wrongful abuse of the process.

8. SAME. *Attachment. Damages. Surety on bond.* Since the adoption of the Code a suit for damages against a creditor for the wrongful suing out of an attachment is an action on the facts of the case, and the measure of damages is precisely the same as in a suit upon the attachment bond, malice and a want of probable cause going in aggravation, and a judgment in such a case on the merits in favor of the defendant is conclusive between the parties, and will enure to the benefit of the surety, and may be relied on as *res adjudicata*, under the general issue in an action upon the bond.

---

FROM SHELBY.

---

Appeal in error from the Circuit Court of Shelby county. J. O. PIERCE, J.

W. M. RANDOLPH and WRIGHT, FOWLKS & WRIGHT for Renkert.

J. H. MALONE and GANTT & PATTERSON for Elliott.

COOPER, J., delivered the opinion of the court.

Action upon attachment bond in which the verdict and judgment were in favor of the plaintiffs below, and the defendant appealed in error.

On March 27, 1874, the State of Tennessee and the county of Shelby filed a bill in the chancery court at Memphis against William Elliott, John D. Elliott and Joseph Elliott, under which they caused to be attached three steamboats as the property of William and John D. Elliott, although the title was in Joseph Elliott. The complainants had recovered large judgments,

amounting to $72,663.27, against one Wm. McLean as tax collector of Shelby county, and the sureties on his official bonds, among whom were William Elliott, John D. Elliott, Andrew Renkert and P. R. Bohlen. The bill sought, upon a return of *nulla bona*, to subject to the satisfaction of these judgments the steamboats, and charged that William and John D. Elliott were the owners of the said steamboats, the conveyance to their brother Joseph Elliott being merely colorable, and intended to hinder and delay their creditors.     The bill prayed for writs of attachment and injunction to attach said boats, and enjoin their transfer. A *fiat* was granted by the chancellor in these words: "Upon complainant giving an injunction bond in the sum of one thousand dollars, and an attachment bond in the sum of ten thousand dollars, issue writs of attachment and injunction as prayed." The attachment bond given was as follows:

"We, the State of Tennessee and county of Shelby, and surety A. Renkert and P. R. Bohlen, acknowledge ourselves indebted to William Elliott *et al.* in the sum of ten thousand dollars, to be void if the said complainants, the State of Tennessee and county of Shelby, who have this day filed a bill in the first chancery court of Shelby county, praying an attachment thereon against the estate of said defendants, William Elliott *et al.*, for the sum of about $72,663.27, and obtained the same upon the execution of this bond, shall prosecute the said attachment with effect, or, in case of failure, pay the defendants all costs which may be adjudged against complainants, and also

all such damages as defendants may sustain by the wrongful suing out of the attachment. Witness our hands and seals this — day of —— 187 .

—————— —————            (*Seal.*)

A. RENKERT,        (*Seal.*)

P. R. BOHLEN.       (*Seal.*)

The attachment was issued and levied upon the three steamboats on the 28th and 30th of March, 1874. On June 9, of the same year an order was made on the county of Shelby to increase its attachment bond to the sum of $25,000, which was followed in a few days by a further order to make the penalty of the bond $37,500 within twenty days, otherwise the attachment would be dismissed. These orders not having been complied with, the court on July 7, 1874, made the following order: "It appearing that the county of Shelby has wholly failed to execute the attachment bond within the time required, it is therefore ordered, adjudged and decreed by the court that the attachment and injunction issued in this cause on behalf of the said county of Shelby be and the same are hereby dismissed and dissolved, and that said cause be only further prosecuted by said county of Shelby as though the bill was an original bill without the extraordinary process of attachment and injunction. And as to the State of Tennessee, the attachment and injunction are retained."

On April 1, 1874, the complainants filed a petition to have the steamboats sold as perishable property, and, in November 17, 1874, an order of sale was made accordingly. Under this order one of the boats was

sold, and the sale confirmed.    January 20, 1875, the
Elliotts were permitted by the complainants to replevy
the other steamboats upon their own bond without se-
curity, which was done.    On February 24, 1875, the
bill was taken for confessed against the Elliotts, but the
order was set aside on June 29, 1875.    The Elliotts
then filed a joint answer admitting the recovery of judg-
ments as claimed by the complainants, but denying the
alleged fraud in relation to the steamboats.    On Septem-
ber 6, 1876, there was filed in the cause a paper writing
signed by the solicitor of Shelby county, written under
the style of the case, as follows :    "It appears that the
defendants, William and John D. Elliott, have fully
paid off their proportion of the defalcation of William
McLean, former tax collector, and, consequently, under
order of the county court passed at its January term,
1876, are entitled to be discharged from all further
liability ;    this suit so far as the county is interested
may be dismissed with costs."

A compromise had been entered into about January
20, 1876, by which each surety of McLean was per-
mitted to release himself from further liability by paying
his proportion of the judgments, after certain deductions,
which compromise agreement was entered on the minutes
of the county court and approved by the court.    It
seems probable also that William and John D. Elliott
had paid their proportion on more of the judgments
before that date, and even before the filing of the bill.
There was a stipulation in the agreement of compromise
that any excess of payment by a surety beyond his
proportion was not to be refunded to him.

Renkert *v.* Elliott.

On June 27, 1877, an order was entered in the chancery suit reciting that it appeared from the statement of the solicitor of the county on file that the liability of the defendants to the county had been paid, and that the cause should be dismissed, "it is therefore ordered, adjudged and decreed by the court that the suit be and is hereby dismissed at the defendants' cost so far as the interest of Shelby county is concerned." On February 22, 1878, the following order was made: "The defendants appear and produce in court the receipt of the comptroller whereby it appears that the parties liable with the said defendants in the judgments in favor of the State of Tennessee, described in the bill, have since the filing of the bill fully paid and satisfied the same, and therefore move the court to order the dismissal of the suit, and to adjudge the costs therefor against the plaintiff; it is therefore ordered, adjudged and decreed that the suit be and the same is hereby dismissed, and that the State of Tennessee recover of the defendants all the costs herein not disposed of by the former decrees, and that execution issue for the same."

On May 8, 1878, Joseph Elliott instituted two suits ịu the circuit court of Shelby county against the county of Shelby, Andrew Renkert and P. R. Bohlen to recover damages for the injury sustained by reason of the proceedings in the chancery case. One of these suits was an action on the facts of the case, and the other upon the attachment bond. In both suits, a *nol pros.* was entered by the plaintiff as to Bohlen, and a demurrer was sustained in favor of the county.

Upon the trial of the action on the facts of the case, a verdict was rendered in favor of the defendant, Renkert. The other action is now before us.

This action upon the attachment bond was originally brought in the name of William Elliott, John D. Elliott and Joseph Elliott, for the use of Joseph Elliott. Upon the demurrer of the defendant the trial judge was of the opinion. that the action should be in the name of the party aggrieved alone. For this reason, and because William and John D. Elliott were then dead, the action was so amended as to leave Joseph Elliott the sole plaintiff. In this attitude of the case, Renkert being the sole defendant, a trial was had, which resulted in a verdict in favor of the plaintiff for $9,100.

The declaration is, perhaps, open to the criticism made that it does assign as a breach of the bond sued on that there was a failure to prosecute the chancery suit with effect. But it also claims damages for the wrongful suing out of the attachment. And, after verdict the declaration will be treated as making a defective statement of a good cause of action, and therefore sufficient.

The defenses relied on were made in one or more of several modes, namely, by demurrer to declaration, by plea, by objection to the admisssion of evidence, and by request for particular charges to the jury. The details of the case need not therefore be followed. It will be sufficient to notice .the points made and discussed by counsel.

The attachment bond sued on is, it will be remem-

16—VOL. 11.

bered, made payable to " William Elliott *et al.*" The
first point insisted upon in defense is that Joseph
Elliott is not named as payee, or entitled to sue on
the bond. The argument in support of the position
is based partly on the form of the bond, and partly
on the assumption that an attachment bond is only
intended to indemnify the persons whose property is
sought to be attached. The statute which prescribes
the form of an attachment bond directs that it shall
be made payable to the " defendant ": Code, sec. 3471.
And it is not denied that, by an elementary rule of
construction, the singular number used in a statute will
include the plural where the word is intended to
designate all of a class. The objection is that the
words " *et al.*" has no definite meaning. But it
might just as well be said that the letter " v," when
found between the names of the plaintiff and defend-
ant to a suit, has no meaning. The words in ques-
tion, as abbreviation, are in common, and every day
use in writs, pleadings, style of cases, and entries on
the minutes and dockets of the court, and are known
to mean " and another " or " and others," as the case
may be. The law required the bond to be made
payable to all of the defendants named in the bill,
for the benefit of whom it might concern. The clerk,
or other draftsman of the bond, made the bond pay-
able to one of the defendants by name, and to the
other defendants by the form of words usually adopted
for the purpose. In a case in which this precise
form of words was used, neither the court nor the
counsel thought it necessary to allude to the fact:

*White* v. *Bowman,* 10 Lea, 55. The bill of the State and county did not seek an attachment against the estate of William and George D. Elliott. It specified the three steamboats as property to be attached, and stated that Joseph Elliott claimed and held the title. If, in fact, these steamboats belonged to Joseph Elliott, he was beyond question the "defendant" most interested in the security intended to be furnished by the bond, and entitled to its benefits.

A more difficult question is in whose name, where there are several defendants, the action should be brought to recover damages for a breach of the bond. The statute undoubtly intended that the bond should enure to the benefit of each and every defendant aggrieved by the suing out of the writ of attachment. If the defendants have all a common interest, as in the case of partners, the suit should, of course, be in the name of all of them. On the other hand, if only one of several defendants was in fact injured, it is equally clear he alone might sue. And in such a case, he might bring the suit in the name of all for his use, or in his own name with an averment that he only was aggrieved. Where there are several defendents, each of whom may be aggrieved in his own right, the question becomes more complicated, and the authorities are in conflict: Drake on Att., sec. 163. If each is allowed to sue for himself, the penalty of the bond might be exhausted in the first recovery, leaving the other parties without redress. To meet this difficulty, as well as to prevent a multiplicity of suits, the suit ought, it would seem, to be brought.

in the name of all, leaving the recovery to be divided among them as they might show themselves entitled. In this State, an action by one defendant has been sustained where the declaration averred that the other defendants had no interest in the particular damages claimed: *White* v. *Bowman*, 10 Lea, 55. In another case, it has been held that even the cause of action of one defendant might be split, and an assignee of the bond under a general assignment in bankruptcy of the defendant's estate might sue and recover for any injury to the property attached, while the defendant himself might recover for the injury to his business, reputation, and character by reason of the attachment of the same property, both being of course entitled to exemplary damages if the case be one for such damages: *Doll* v. *Cooper*, 9 Lea, 576. I was of opinion that such a splitting of actions was not in accord with the principles of common law, nor authorized by statute, and dissented from the latter ruling. No difficulty exists in the case before us. The suit was brought in the name of all the obligees for the use of the plaintiff, and the defendant cannot complain that the action is now in the name of the plaintiff alone. For the result has been brought about by his own action. It appears, moreover, that the other two plaintiffs are dead.

The attachment bond is conditioned for the payment of all such damages as defendant may sustain, and not in terms for the several damages of each defendant. But it does not follow, as contended for by the defendant's counsel, that the words only import the

payment of the joint damages of all of the defendants. The bond follows the words of the statute except that it uses the plural instead of the singular number. The object of the statute, as we have seen, was to indemnify each defendant if each has a separate interest, as well as all of the defendants collectively if they have a joint interest.    In like manner, where a person is a surety for more than one principal, it is the settled law of this State that he is bound for his principals severally as well as jointly : *Kelly* v. *Gordon*, 3 Head, 683; *McCabe* v. *Sutton*, 7 Lea, 248.    The bond must be read by the light of the statute, and will be held to have been executed in accordance therewith, unless the language unmistakably expresses the contrary.    The statue requires the bond to be executed by the plaintiff, his agent or attorney, and it may be a question whether a bond not thus executed would prevent the discharge of the attachment.    But if not thus executed, the bond, being amendable, is voidable, not void, and if acted upon is binding on those who do execute it: Drake on Att., sec. 150.

The breach of the bond is that the damages sustained by the defendants have not been paid if there has been a failure to prosecute the attachment, with effect. In the case of an original or ancillary attachment, the defense must be made generally by plea in abatement attacking the ground on which the attachment has been sued out.    But a failure to successfully prosecute the cause of action might equally show that the attachment was wrongfully sued.    The bill of the State and county in the case under consideration was

a bill under the Code, sec. 4283, *et seq.*, to reach equitable assets of a judgment debtor in the hands of a third person under an alleged fraudulent conveyance or device. The attachment in such a case is not jurisdictional, but merely a writ to impound the property pending litigation. It takes the place of a writ of injunction, and the appointment of a receiver at common law. It is not what is called a writ of attachment at law upon the propriety of the issuance of which an issue may be made and tried independently. It abides the event of the principal litigation unless the court sees proper, upon good cause shown, to discharge it upon an application made for the purpose in the same way that an application may be made to dissolve an injunction or discharge a receiver. The penalty of the bond rested in the discretion of the chancellor: Code, sec. 4289. He had the right to demand a new bond with an additional penalty for the protection of the defendants, and to discharge the attachment for sufficient cause. What he should have done upon the failure of the county to give the additional bond required was not to discharge the attachment *in toto,* but to have reduced the levy of the attachment to so much of the property as was covered by the penalty of the bond originally given : Code, sec. 4451. But his action in discharging the attachment altogether, although erroneous, was not void. From that moment, as properly held by the circuit judge, the liability of the county and its sureties under the attachment bond necessarily ceased. The bond was clearly void as to the State as also

held by the trial judge, and no liability on the part of the sureties was created thereby, for the obvious reason that there can be no surety without a principal.

The judgments on which the bill of the State and county was based were valid, subsisting judgments, and for a much larger amount than the payment then made therein, including the payments obtained by the sale of the property of William and John D. Elliott mentioned in their answer. The judgment creditors had the legal right to proceed against the property of any of the judgment debtors. The bill was therefore properly filed for the purpose of reaching the property and effects of these defendants, and, of course, the steamboats attached, if indeed they had an interest in them. The State and county had, however, no demand against Joseph Elliott, and their bill was wrongfully filed against him, and the attachment wrongfully sued out as to him unless his claim and title to the steamboats mentioned in the bill were in fact merely colorable. That question was in no way tested by the proceedings which eventuated in the order of the court discharging the attachment, or in the order itself. The inability or unwillingness of the county to give another bond was not in fact or in law a recognition of Joseph Elliott's title, nor was the order of the court an adjudicature that the writ had been wrongfully sued out. The subsequent dismissal of the suit with the consent of the county court, because " William and John D. Elliott had paid off their proportion of the defalcation of McLean," would not on its face imply that the suit had not been successfully prose-

cuted.    Nor would the fact that the liability had been compromised pending the litigation upon the terms of each surety paying his proportion of the debt, and that the Elliotts had paid their share before suit was brought.    For the county may have been induced to make the compromise by payments made by other sureties, and by motives of kindness to the debtors. There is not the least pretense that the judgments sued on were not valid judgments which could have been enforced against the defendants.    On the other hand, the entry of dismissal could in no sense be considered a successful prosecution of the suit as against Joseph Elliott.    Nor could it be said that he, as an obligee of the attachment bond, prevented the county from prosecuting the suit with effect because his co-obligee compromised the debt sued on with the county.    The suit was necessarily terminated by a satisfaction in any way by the debtors of the complainant's debt, and could not be retained to try the abstract question of the colorable or real character of Joseph Elliott's claim to the property attached.    And if the compromise upon such favorable terms to the debtors might be considered as suggesting a doubt on the part of the complainants of the justice of their claim against Joseph Elliott, the acquiescence of the latter in a judgment against him for the costs would indicate that he himself did not feel altogether secure in his claim.    The trial judge was right therefore, in treating the question as an open one, not settled by the original suit, and to be determined in the action on the bond.

The action being upon the bond, the trial judge told the jury properly that the liability of the defendant Renkert was exclusively as surety for the county, and that he would only be liable for such damages as could be recovered against his principal. These damages his Honor said must be the natural, proximate, legal result or consequence of the suing out of the attachment. "In addition," he said, "if the jury find that the attachment was sued out either with malice or ill feeling towards the defendant, Joseph Elliott, or that it was done so recklessly as to indicate a willful or wanton disregard of the rights of the plaintiff, then the jury might give exemplary damages." There is not the least testimony in the record to show that the county or its officers were actuated by malice towards Elliott, or that the levy of the attachment was made in a wanton or reckless manner. The counsel of the defendant in error have not seriously insisted upon the correctness of this part of the charge. They contend that it is clear from the evidence that the jury gave only actual, and not exemplary damages. The attachment was levied on the last days of March and discharged upon the 7th of the following July, a few days over two months. The verdict seems to be rather large for the actual damages by detention for that period, the property being in *custodia legis.*

Another serious question arises upon one of the rulings of the trial judge on the admission of evidence. It will be remembered that on the very day this action was commenced, Joseph Elliott brought

another suit against the county of Shelby and Andrew Renkert to recover damages for the same cause. This suit resulted in favor of the county upon demurrer to the merits, and in favor of Renkert upon trial by the verdict of a jury. The judgment was a bar to another action between the parties: *Parks* v. *Clift*, 9 Lea, 524. The record of this suit was offered as evidence by the defendant under the general issue to show a former adjudication of the same matters, and was rejected by the court. The record shows that the action was on the facts of the case. The first count alleged that the original bill was filed and the attachment sued out maliciously and without probable cause. The second count was for the wrongful filing of the bill and suing out of the writ. The other two counts were a repetition of these with the addition that the defendants combined and confederated with the State of Tennessee and P. R. Bohlen to sue.

A former judgment may be shown in evidence under the general issue, as well as pleaded in bar, and is equally conclusive: *Warwick* v. *Underwood*, 3 Head, 338: 1 Gr. Ev., secs. 530, 531; Freeman on Judgments, sec. 284. It has also been held by this court, that where suit is brought against a surety for a debt from which the principal has been discharged by a court of competent jurisdiction, the surety is entitled, upon proof of the fact of valid discharge, to rely upon the judgment of discharge as an estoppel either at law or in equity; and that this must be regarded as an exception to the general rule of *res inter alias acta: Gill* v. *Morris*, 11 Heis., 614.

The county was discharged from all liability to the present plaintiff for the cause of action then sued upon. And the question is whether the discharge, there being no doubt of the validity of the proceedings, enures to the benefit of the surety.

The suit was against the county of Shelby and the present defendant, but, except upon the counts charging a confederacy, it was several as to each defendant, and a several judgment might have been rendered: Code, sec. 2972. It has been uniformly held by the courts that the remedy of a defendant for a wrongful attachment by an action for a malicious prosecution is not affected by the execution of an attachment bond: Drake on Att., sec. 154. Our cases are in accord: *Smith* v. *Story*, 4 Hum., 169; *Smith* v. *Eakin*, 2 Sneed, 456. It was plainly the opinion of the court in these cases that the common law action thus reserved was the action for malicious prosecution, in which it was necessary to prove both malice and a want of probable cause. And that view was followed in *Sloan* v. *McCracken*, 7 Lea, 626, although not essential to the point actually ruled. But these early cases were decided when the old system of forms of action was still in force. The limitation of actions, and other rights were defended upon these forms, and rigid adherence to them required. The Code abolished the system, and, in effect, allowed all actions, either in tort or contract, to be brought upon the facts of the case: Code, sec. 2746, *et seq.* A party aggrieved by the wrongful suing out of an attachment is entitled to recover damages therefor. He may sue the attach-

ing creditor for these damages either on the bond, if the creditor has signed it as an obligor, or on the facts of the case. The latter is perhaps his only remedy, if the creditor is not a party to the bond. In both cases the action is really on the facts of the case, and the measure of damages precisely the same, the damages on the bond being limited by the penalty: *Jennings* v. *Joiner*, 1 Cold., 645 ; *Doll* v. *Cooper*, 9 Lea, 574. Malice and want of probable cause go, in both cases, in aggravation of damages. The weight of authority sustains these views, the decisions in this State being treated as exceptional: Drake on Att., sec. 158.

The reason for the rulings is that the expression of legislative will, in designating the terms of the attachment bond, plainly indicates that the mere wrongful recourse to the process of attachment is a sufficient cause of action, and that malice is important only in connection with the question of damages. If it were otherwise, and the attaching creditor had failed as in the present case to go upon the bond, and the surety had become insolvent, the aggrieved party might perhaps have no remedy against the principal unless he could show both malice and want of probable cause, which would be contrary to the express object of the statute. And at any rate the party has his election to sue on the bonds or the facts, and would be equally concluded by the judgment. Accordingly, in a recent case at Memphis, where the injured party sued the attaching creditor in the Federal Court upon the facts of the case, Judge Hammond held that he

·could recover the actual damages sustained, whether there was any malice and want of probable cause or not: *Jerman* v. *Stewart*, 12 Fed. Rep., 266.

In this view, the discharge of the county in the suit on the facts of the case enured to the benefit of the surety as *res adjudicata*, and the trial judge erred in excluding the record of that suit from the jury.

The judgment must be reversed, and the cause remanded for further proceedings.

The case of Shelby county *v.* Renkert shares the fate of this case, and is reversed and remanded.